# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Zimmer Spine, Inc.

      Plaintiff,                                 Case No. _____

v.

Frank W. Wainright and Pro Medical LLC,

      Defendants.

---

# COMPLAINT

For its complaint against defendants Frank W. Wainright and Pro Medical, LLC ("Pro Medical"), plaintiff Zimmer Spine, Inc. ("Zimmer Spine") states as follows:

1.      This case arises from the defendants' wrongful termination and breach of their distributorship agreement with Zimmer Spine.  Defendants not only improperly terminated that agreement with Zimmer Spine with no advance notice, they orchestrated a meeting between their sales representatives – who had been the face of Zimmer Spine to customers – and one of Zimmer Spine's fiercest competitors, during which the competitor made employment offers for the sales representatives to bring the customer relationships they had developed trading on Zimmer Spine's goodwill and reputation to that competitor.  Defendants further advanced their plan to hand over Zimmer Spine's customer relationships and sales to a direct competitor by violating other contractual obligations that could have helped Zimmer Spine to stop or at least mitigate the harm of defendants' plan.  This includes, among other things, breaching their obligations to obtain from their sales representatives non-competition covenants that conferred independently

enforceable third-party beneficiary rights on Zimmer Spine, and their obligations to "take all such actions . . . as are necessary to facilitate the transition of [Pro Medical's] business for [Zimmer Spine] under this Agreement" to Zimmer Spine in the event of a termination.  These breaches, and others detailed below, have already inflicted significant harm on Zimmer Spine and will cause additional harm if they are not remedied immediately.

## THE PARTIES

2.      Zimmer Spine develops, manufactures, and sells spine care implants, devices and related medical products, instruments, and supplies, and provides related services, for the treatment and care of patients who suffer back pain, neck pain, degenerative disk conditions, and injuries due to trauma.

3.      Zimmer Spine generally does not employ direct sales representatives but rather contracts with independent distributors, called "Sales Representatives."  These Sales Representatives, in turn, employ or contract with sales personnel to promote Zimmer Spine's products to, and solicit orders from, physicians and hospitals, and to provide support services to those physicians when they use Zimmer Spine's products.

4.      Pro Medical was Zimmer Spine's Sales Representative in Colorado, Montana, and Wyoming.

5.      Frank W. Wainright is the 100% owner and sole member of Pro Medical.

## RELEVANT NON-PARTY

6.      "Biomet Spine" (the d/b/a name of EBI, LLC) is a significant direct competitor of Zimmer Spine.  Biomet Spine competes directly against Zimmer Spine for

both customer sales and Sales Representatives and other sales personnel who can provide the highest quality service to customers to enhance and maximize those sales.

## VENUE AND JURISDICTION

7.     Venue is proper in this district because the Sales Representative Agreement between Zimmer Spine, on the one hand, and Pro Medical and Frank Wainright, on the other hand, expressly provides that "[a]ll controversies, disputes and claims between [Zimmer Spine] and [Pro Medical] or [Frank Wainright] arising out of the relationship of the parties hereto, including without limitation claims related to this Agreement or any other agreement between the parties or any provision of such agreements, including the validity or enforceability thereof, shall be resolved exclusively in state or federal court in Minneapolis, Minnesota." (Sales Representative Agreement ("Agreement"), § 34.D.)[1]

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because plaintiff Zimmer Spine is a citizen of different states than are defendants Pro Medical and Frank Wainright, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Plaintiff Zimmer Spine, incorporated under Delaware law, has its corporate headquarters at 7375 Bush Lake Road, Minneapolis, Minnesota 55439.

10.     Defendant Pro Medical is a Colorado limited liability company, has its company headquarters in Colorado.

11.     Defendant Frank Wainright is a citizen of Colorado.

---

[1] Zimmer Spine is not attaching a copy of the Agreement or its exhibits because certain provisions of those documents contain confidential, competitively-sensitive information.

12.     This Court has personal jurisdiction over the defendants because they have expressly consented to that jurisdiction.  In their Sales Representative Agreement, Pro Medical and Frank Wainright expressly agreed that "[e]ach party consents to personal jurisdiction in [state or federal court in Minneapolis, Minnesota] . . . and agrees that personal jurisdiction in any such court will be deemed proper."  (*Id.* § 34.D.)

## GENERAL BACKGROUND

### A.     The Parties' Relationship

13.     Effective January 1, 2009, Pro Medical contracted to serve as the Sales Representative of Zimmer Spine in Colorado, Montana, and Wyoming.  (*Id.* at p. 1 (first paragraph, defining "Effective Date"), § 2 & Exhibit A (defining "Territory")).

14.     The Sales Representative Agreement is governed by Minnesota's substantive law.  (*Id.* § 34. C.)

15.     The Sales Representative Agreement between Zimmer Spine and Pro Medical had a three year initial term, expiring on January 1, 2012.  (*Id.* at p. 1 (first paragraph), § 5.)

16.     The Sales Representative Agreement defined Pro Medical as the "Representative," and provided that, "[i]f Representative is a business entity," then it must identify "all persons holding a direct or indirect, legal or beneficial Ownership Interest . . . in Representative (each an 'Owner') . . . ."  (*Id.* § 2.)  The Agreement also provides that "[e]ach Owner shall cause Representative to perform its duties and obligations hereunder."  (*Id.*)

17.     Pro Medical identified Frank Wainright as its sole Owner.  (*Id.*, Exhibit B.)

18.     Mr. Wainright signed the Sales Representative Agreement twice.  He signed it once on behalf of Pro Medical.  (*Id.* at p. 26.)  He signed it a second time in his individual capacity, in which he "join[ed] this Agreement . . . as to those provisions of this Agreement that require any performance hereof by an Owner."  (*Id.*)  This includes him individually joining the Agreement both as to the provisions that impose specific obligations directly upon the "Owner" (such as Sections 24, 25, and 26) and as to the provision in Section Two that requires him to cause Pro Medical to perform all of its duties and obligations under the Agreement.

19.     Because Zimmer Spine entrusts its Sales Representatives like Pro Medical with protecting and enhancing its reputation and goodwill with customers and potential customers, and with a wealth of competitively sensitive, confidential information – and because Pro Medical reaps a handsome profit trading on Zimmer Spine's research and development efforts, reputation and goodwill, and confidential information – Zimmer Spine, Pro Medical, and Mr. Wainright agreed in their Sales Representative Agreement that Pro Medical and Mr. Wainright would perform certain obligations during the term of the Agreement and following any termination of the Agreement.

20.     In Section 10, Pro Medical and Mr. Wainright "agree[d] to maintain at all times a full complement of trained employees, agents, and sales associates ('Personnel') sufficient to enable [Pro Medical] to fulfill its responsibilities in the Territory for all [Zimmer Spine products it carried] in compliance with [Zimmer Spine]'s requirements." Pro Medical and Mr. Wainright also agreed in Section 10 to "take all necessary steps to attract and retain qualified, skilled and competent Personnel . . . ."

21.     Also in Section 10, Pro Medical and Mr. Wainright promised to "cause each of [Pro Medical's] Personnel to agree in writing to be bound by covenants against: (a) disclosure of confidential information, (b) competition with [Pro Medical] or [Zimmer Spine], and (c) solicitation of customers . . . ."  Each of these covenants was required to provide that Zimmer Spine "is an express third party beneficiary of such covenants with an independent right of enforcement." (*Id.* § 10.)  Exhibit D to the Sales Representative Agreement contained proposed forms of these covenants, which Pro Medical could modify as appropriate to comply with local law.  Sections 10 and 23 also gave Zimmer Spine the right to review those agreements between Pro Medical and its Personnel to confirm compliance with this obligation.

22.     In Section 24, Pro Medical and Mr. Wainright promised that they would not reveal any "Confidential Information," including without limitation:

A.     Marketing, sales, and advertising information, including list of customers or potential customers; customer preference data; marketing and sales techniques, strategies, efforts, and data; business plans; strategies utilized, and the success or lack of success of those strategies;

B.     Organizational information including:  personnel and salary data;

C.     Financial information such as:  product costs; supplier information; profit margins; and pricing policies; and

D.     Technical information including:  product specifications; improvements; discoveries; developments; designs, inventions; techniques; and new products.  (Agreement §24.)

23.     These confidentiality obligations existed not only during the term of the

Agreement, but also during the "Restricted Period," which is (a) five years from the

expiration or termination of the Sales Representative Agreement for Confidential

Information that is not a "trade secret" under Minnesota law, and (b) indefinitely for

Confidential Information that is a "trade secret" under Minnesota law.  (*Id.*)

24.     Also in Section 24, Pro Medical and Mr. Wainright promised that,

"[i]mmediately upon termination of this Agreement, [Pro Medical] will return to

[Zimmer Spine] all of [Zimmer Spine]'s papers, documents and things (and copies

thereof), which are in [Pro Medical's] possession or under [its] control regardless of

whether such papers, documents or things contain Confidential Information."

25.     In Section 25, Pro Medical and Mr. Wainright promised that, during the

term of the Agreement, they would not, "directly or indirectly, through any other person

or entity, on [their] own account, or as an employee, independent contractor, agent, sales

representative, consultant, partner, owner, officer, director or stockholder of any other

person, partnership, corporation or entity:"

>               (1) have any interest in (other than an ownership
> interest of 1% or less in a publicly traded corporation) or provide
> services for any business other than [Zimmer Spine], wherever
> located or operating, that manufactures, distributes, markets, sells or
> promotes spinal or orthopedic implants, devices, instruments or
> related medical products; or
>
>               (2) solicit, attempt to solicit or engage in discussions
> or other communications with any party with the purpose or intent of
> promoting, selling or obtaining orders for any spinal or orthopedic
> implants, devices, instruments or related medical products other than
> soliciting orders and servicing accounts for purchase of the [Zimmer

Spine] Products in accordance with the terms and conditions of this Agreement.

26.     In Section 26, Pro Medical and Mr. Wainright promised that, "[f]or a period of eighteen (18) months, beginning on the later of the termination or expiration of this Agreement for any reason or the date on which [Pro Medical] begins to comply with this Section 26, [Pro Medical] and [Mr. Wainright] shall not, without the prior written consent of [Zimmer Spine], either directly or indirectly, on [their own] behalf, or on behalf of any person, firm, corporation or other business or legal entity (other than on behalf of [Zimmer Spine] in accordance with the terms and conditions of a successor agreement with [Zimmer Spine]):

> 1.     Solicit, attempt to solicit or engage in discussions or other communications with (regardless of who initiates such discussions or communications) any Restricted Customer (defined below) with the purpose or intent of promoting, selling or obtaining orders for any products which are the same or serve a similar purpose as the [Zimmer Spine] Products, including without limitation any spinal or orthopedic implants, devices, products, instruments, services or supplies sold, marketed or promoted by [Pro Medical] or the Business during the twenty four (24) months preceding the termination of the Agreement.

> 2.     Have any interest in or provide services for any Competitive Business located, operating or offering or selling products within the Territory."

(Agreement § 26. A.)  "Restricted Customer" is defined as any person or entity who, during any part of the twelve months immediately preceding termination of the Agreement, (1) (a) was an actual customer of Zimmer Spine or an affiliate, (b) participated in or influenced the purchasing decision of actual customer of Zimmer Spine or an affiliate, or (c) used or implanted the Zimmer Spine Products purchased by an

actual customer of Zimmer Spine or an affiliate; and (2) was solicited or serviced directly

or indirectly by Pro Medical, the Business, or Pro Medical's Personnel.  (*Id.* § 26. B.)

"Competitive Business" is defined as "a business offering or selling products that are

competitive with any of the Products or any other products that [Pro Medical] was

promoting, marketing or soliciting orders for on behalf of [Zimmer Spine] or its affiliates

at any time during the twenty four (24) months preceding the termination of this

Agreement."  (*Id.* § 26. A. 2.)

**B.     Permissible Termination Of The Parties' Relationship**

27.     Pro Medical's Sales Associate Agreement contains express terms for

termination of that Agreement, with and without cause.

28.     The Agreement permits either party to terminate "without cause upon

ninety (90) days written notice to the other party, at any time effective upon expiration of

the Initial Term or any renewal term."  (Agreement § 28. A.)  Because the Initial Term

did not expire until January 1, 2012 (*id*. § 5), Pro Medical could not make a "without

cause" termination effective until after then.

29.     The Agreement also contains bilateral "for cause" termination provisions.

(*Id.* §§ 28. B., 28. C.)

30.     Pro Medical is permitted to terminate the Agreement for cause

"immediately upon notice in the event of (a) the insolvency of [Zimmer Spine], (b) the

filing of a petition in bankruptcy by or against [Zimmer Spine], (c) the appointment of a

receiver for [Zimmer Spine], or (d) execution of an assignment by [Zimmer Spine] for

the benefit of creditors."  (*Id.* § 28. C.)

31.     If Zimmer Spine "is in breach of any of its material obligations under this Agreement," then Pro Medical may terminate the Agreement for cause "effective sixty (60) days after the delivery of written notice of termination" to Zimmer Spine, but only if Zimmer Spine "does not:  (1) correct such breach within thirty (30) days after delivery of notice of such breach; or (2) if such breach cannot reasonably be cured within thirty (30) days after delivery of notice of such breach, undertake within thirty (30) days after delivery of such notice, and continue until completion, reasonable efforts to cure such breach."  (*Id.*)

### C.     Post-Termination Transition Assistance Obligations

32.     Because Zimmer Spine entrusted significant sales and customer service responsibilities to Pro Medical,  Zimmer Spine required that Pro Medical take affirmative steps to help transition those responsibilities to Zimmer Spine (or its designee) in the event the Sales Representative Agreement were terminated.

33.     In the Sales Representative Agreement, Pro Medical agreed that, "[u]pon termination or expiration of this Agreement, and thereafter as necessary in the circumstances," it would "take all such actions and sign all such documents as are necessary to facilitate the transition of [Pro Medical]'s business for [Zimmer Spine] under this Agreement ([Pro Medical]'s 'Zimmer Business') to [Zimmer Spine] or its designee."  (*Id.* § 32.)

34.     "Without limiting the generality of the foregoing," Pro Medical agreed that, upon termination of the Agreement, and thereafter as necessary in the circumstances, it would, among other things:

A.    Facilitate discussions between its Personnel and Zimmer Spine regarding employment or other opportunities for such persons in Zimmer Spine;

B.    Facilitate discussions between Zimmer Spine and customers within Pro Medical's territory;

C.    Release all of Pro Medical's Personnel from any obligation that would restrict them from working for Zimmer Spine or its designee;

D.    Except to the extent required to be released under clause C, above, retain in full force and effect, and enforce to the fullest extent permitted by law, all covenants against competition, solicitation and disclosure of confidential information made by Personnel to Pro Medical which are in effect as of the date of termination;

E.    Deliver to Zimmer Spine to the fullest extent possible when and as directed a complete set of business records for Pro Medical's Zimmer Business which records shall include, without limitation, complete customer records.

F.    Provide Zimmer Spine or its designee when and as directed by the Company and all other information Zimmer Spine reasonably requests relating to Pro Medical's Zimmer Business; and

G.    Comply with any other reasonable request by Zimmer Spine relating to the transition of Pro Medical's Zimmer Business to Zimmer Spine or its designee.  (*Id.* § 32. A.-G.)

**D.    Pro Medical And Mr. Wainright's Orchestrated Scheme With Biomet Spine And Wrongful Termination Of The Sales Representative Agreement.**

35.    On or about November 18, 2010, Frank Wainright called an "emergency" meeting of Pro Medical's Zimmer Spine sales representatives at a Colorado resort.

36.    At that meeting, Mr. Wainright made the surprise announcement that he was terminating his relationship with Zimmer Spine.

37.    In an obviously well-orchestrated and coordinated move, Mr. Wainright's announcement was immediately followed by the appearance of approximately thirteen representatives from Biomet Spine, a major competitor of Zimmer Spine.

38.    These Biomet Spine representatives offered employment to the Pro Medical Zimmer Spine sales representatives, including an up-front signing bonus.  The Biomet Spine representatives distributed employment contracts for the sales representatives to sign on the spot.

39.    Around the same time, Mr. Wainright faxed a letter to Zimmer Spine claiming to terminate the Sales Associate Agreement.  A copy of this letter is attached as Exhibit 1.

40.    In that letter, Mr. Wainright asserted that his termination was "for cause due to the failure of Zimmer to develop, manufacture and sell Products of merchantable quality . . . ."

41.    This is the first written (indeed, any) notice that Mr. Wainright or Pro Medical provided to Zimmer Spine of this purported concern about product quality.

42.     This purported concern about product quality is not one of the four specified events in Section 28. C. that permits an immediate "for cause" termination by Pro Medical.  Indeed, none of those specified events has ever occurred.

43.     Under Section 28. C., Pro Medical is otherwise permitted to terminate the Sales Representative Agreement "for cause" only upon a material breach by Zimmer Spine, which termination becomes effective sixty (60) days after delivery of written notice, but only if, within thirty (30) days of that notice, Zimmer Spine does not cure, or begin to cure, the alleged breach.

44.     Because Pro Medical's purported November 18, 2010 immediate "for cause" termination does not comply with any provision in Section 28. C., it is wrongful.

45.     Mr. Wainright's letter also claims that "[a]lternatively, [Pro Medical] also hereby terminates the Agreement without cause effective February 17, 2011 . . . ."

46.     Under Section 28. A., however, any termination "without cause" is not effective without "ninety (90) days written notice," and then only "upon expiration of the Initial Term or any renewal term," which will not occur until January 1, 2012.

47.     Because Pro Medical's purported alternative November 18, 2010 "without cause" termination does not comply with any provision in Section 28. A., it is wrongful.

48.     Beyond these deficiencies in the purported termination notice, Pro Medical and Mr. Wainright wrongfully terminated the Sales Representative Agreement and the relationship it created when they entered into a secret relationship with Biomet Spine – one of Zimmer Spine's fiercest competitors – and assisted Biomet Spine in trying to hire

Pro Medical's Zimmer Spine sales representatives and misappropriate Zimmer Spine's customer relationships and sales.

### E.    Pro Medical And Mr. Wainright's Pre-Termination Breaches

49.    Before they wrongfully terminated the Sales Representative Agreement with Zimmer Spine, Pro Medical and Wainright breached several provisions of that Agreement, all of which appear to have been part of their scheme to try to steal Zimmer Spine's customer relationships and sales and abscond with them to Biomet Spine.

50.    Under Section 8, Pro Medical "shall prepare and deliver to [Zimmer Spine] an annual business plan for the next calendar year no later than November 15 of the preceding year."  Pro Medical failed to deliver, and Mr. Wainright failed to cause it to deliver, a 2011 business plan to Zimmer Spine by November 15, 2010.  Obviously, withholding this business plan from Zimmer Spine would severely impair Zimmer Spine's ability to step in and fill the void that Pro Medical and Mr. Wainright attempted to create by suddenly and improperly terminating their Zimmer Spine Sales Representative Agreement and shepherding their sales personnel to Biomet Spine.

51.    Under Section 10, Pro Medical was obligated to, and Mr. Wainright was obligated to cause it to, sign non-disclosure, non-competition, and non-solicitation agreements with its Personnel that conferred express, independently enforceable third-party beneficiary rights on Zimmer Spine.  Section 10 also gave Zimmer Spine "the right to review all agreements between [Pro Medical] and its Personnel" to ensure compliance with this obligation.  Section 23 provided Zimmer Spine with an additional right to inspect and audit all of Pro Medical's business records "for the purpose of determining

whether [Pro Medical] and/or [Mr. Wainright] has complied with the terms and conditions of this Agreement."

52.     On July 27, 2010, Zimmer Spine sent a letter to Mr. Wainright noting that it did not have copies of any of Pro Medical's contracts with its Personnel and asking him to provide copies by August 16, 2010.  A copy of this letter is attached as Exhibit 2.

53.     In violation of the obligations imposed by Sections 10 and 23, Pro Medical failed to provide, and Mr. Wainright failed to cause it to provide, copies of those contracts to Zimmer Spine.

54.     On October 28, 2010, Zimmer Spine was forced to write to Mr. Wainright again, notifying him in an e-mail that, of Pro Medical's fourteen sales personnel, only one contract had been provided.  Zimmer Spine asked for copies of the remaining contracts.  A copy of that e-mail is attached as Exhibit 3.

55.     In violation of the obligations imposed by Sections 10 and 23, Pro Medical failed to provide, and Mr. Wainright failed to cause it to provide, copies of those contracts to Zimmer Spine.

56.     Moreover, the one Pro Medical contract that was provided to Zimmer Spine indicates that Pro Medical failed to obtain, and Mr. Wainright failed to cause it to obtain, non-disclosure, non-competition, and non-solicitation covenants that confer express, independently enforceable third-party beneficiary rights on Zimmer Spine, as Pro Medical was required to obtain under Section 10.  A copy of this contract is attached as Exhibit 4.

57.     Pro Medical breached its "Staffing" obligations under Section 10 by failing to take, and Mr. Wainright failed to cause it to take, "all necessary steps to attract and retain qualified, skilled and competent Personnel," including but not limited to by providing personnel and salary data to Biomet Spine and facilitating a meeting between Pro Medical's Zimmer Spine Personnel and Biomet Spine to help Biomet Spine hire those Personnel to compete directly against Zimmer Spine.

58.     Pro Medical and Mr. Wainright breached their "Confidentiality" obligations under Section 24, including but not limited to by providing "personnel and salary data" to Biomet Spine, as indicated by the fact that Biomet Spine was able to present on-the-spot employment offers, including guaranteed compensation and signing bonuses, to Pro Medical's Zimmer Spine Personnel on November 18.

59.     Pro Medical breached its obligations under Section 24 by failing to return, and Mr. Wainright failed to cause Pro Medical to return, immediately upon termination of the Agreement, all of Zimmer Spine's papers, documents, and things in Pro Medical's possession or control, regardless of whether those papers, documents and things contain Confidential Information.

60.     Pro Medical and Mr. Wainright breached their "Exclusive Relationship" obligations under Section 25, including but not limited to by, directly or indirectly, engaging in discussions with Biomet Spine for the purpose and intent of promoting, selling, and obtaining orders for spinal and/or orthopedic implants, devices, instruments and/or related medical products.

### F.   **Pro Medical And Mr. Wainright's Post-Termination Breaches**

61.     Since Pro Medical's wrongful termination of the Sales Representative Agreement, Pro Medical and Mr. Wainright have breached multiple obligations in that Agreement that survive its termination.

62.     Pro Medical and Mr. Wainright have breached their "Non-Competition" obligations under Section 26, including but not limited to by, directly or indirectly, providing services to Biomet Spine.

63.     Pro Medical has breached its "Transition Assistance" obligations under Section 32 by failing to, and Mr. Wainright has failed to cause it to, "take all such actions and sign all such documents as are necessary to facilitate the transition of" Pro Medical's business for Zimmer Spine under the Sales Representative Agreement to Zimmer Spine. These failures include, but are not limited to:

a.     failing to facilitate discussions between Pro Medical's Personnel and Zimmer Spine regarding employment in Zimmer Spine and, to the contrary, facilitating discussions between Pro Medical's Personnel and Zimmer Spine's direct competitor, Biomet Spine, regarding employment in Biomet Spine;

b.     failing to enforce all covenants against competition, solicitation and disclosure of confidential information made by Pro Medical's Personnel and Pro Medical and, to the contrary, directly or indirectly encouraging Pro Medical's Personnel to go to work for Biomet Spine competing directly against Zimmer Spine.

c.     Failing to provide copies of Pro Medical's contracts with its Personnel to Zimmer Spine; and

d.      Failing to provide Zimmer Spine with a complete schedule of all pending cases involving Zimmer Spine products in Pro Medical's territory and a plan for continuing to cover those cases and provide related services until Zimmer Spine can fully transition those cases and services to its own personnel.

64.      Although these obligations imposed by Section 32 are self-executing, and although Mr. Wainright's November 18, 2010 "termination" letter asserted that Pro Medical "is fully prepared to comply with its obligations to provide transition assistance upon termination as set forth in Section 32 of the Agreement" (Exhibit 2), Zimmer Spine sent a letter on November 19, 2010 to Mr. Wainright by e-mail and facsimile specifically requesting compliance with these Section 32 "Termination Assistance" obligations.  A copy of that letter is attached as Exhibit 5.  Mr. Wainright, however, has ignored that letter and failed to comply with any of those obligations.

## <u>COUNT I – BREACH OF CONTRACT AGAINST FRANK WAINRIGHT</u>

65.      Zimmer Spine incorporates the preceding paragraphs of this Complaint as if fully restated here.

66.      As set forth above, Mr. Wainright has breached the obligations in Sections 24, 25, and 26 that he assumed directly and individually as the designated "Owner."

67.      As set forth above and below, Mr. Wainright has breached the obligation in Section 2 that the Agreement imposes on him, as the "Owner" of Pro Medical, to "cause [Pro Medical] to perform its duties and obligations" under the Agreement.

68.      As a direct result of Mr. Wainright's conduct, Zimmer Spine has been harmed and faces additional harm.

18

## COUNT II – BREACH OF CONTRACT AGAINST PRO MEDICAL

69.     Zimmer Spine incorporates the preceding paragraphs of this Complaint as if fully restated here.

70.     As set forth above, Pro Medical has breached its obligations under the Sales Representative Agreement.

71.     As a direct result of Pro Medical's conduct, Zimmer Spine has been harmed and faces additional harm.

## COUNT III –DECLARATORY JUDGMENT REGARDING RECENTLY NEGOTIATED COMMISSION INCREASE TO PRO MEDICAL

72.     Zimmer Spine incorporates the preceding paragraphs of this Complaint as if fully restated here.

73.     In October 2010, just weeks before Pro Medical's and Mr. Wainright's sudden and improper termination of the Zimmer Spine Sales Representative Agreement, Zimmer Spine agreed to amend Exhibit C to that Agreement, which sets forth Pro Medical's commission rates for 2010 and 2011.

74.     In the amended Exhibit C, Zimmer Spine agreed to pay a "special" additional commission based on year-over-year sales growth.  This agreement was retroactive to January 1, 2010.

75.     The primary purpose of this amendment was to secure the continued loyalty of Pro Medical.  Zimmer Spine obvious gains no monetary benefit by agreeing to pay in October 2010 an additional commission on sales that Pro Medical had already made going back to January 1, 2010.  The only benefit of the amendment to Zimmer Spine was

that, by increasing Pro Medical's compensation, Pro Medical would remain committed to representing Zimmer Spine's products and servicing its customers.

76.     Pro Medical induced Zimmer Spine to enter into the amended Exhibit C by falsely representing that it intended to continue to honor the Sales Representative Agreement and to remain as Zimmer Spine's Sales Representative pursuant to the terms of that Agreement.

77.     Pro Medical made that false representation deliberately and with the intent to deceive Zimmer Spine.

78.     Zimmer Spine relied on Pro Medical's false representation, and that reliance was a material reason why Zimmer Spine agreed to enter into the amended Exhibit C.

79.     As a result, Zimmer Spine seeks a declaration that the amended Exhibit C is void and/or rescinded for fraudulent inducement.

80.     In the alternative, Zimmer Spine seeks a declaration that the amended Exhibit C is void and/or rescinded for lack of consideration.

## JURY TRIAL WAIVED

81.     In the Sales Representative Agreement, "[e]ach party irrevocably waive[d] trial by jury in any action, proceeding or counterclaim, whether at law or in equity, brought by either party."  (*Id.* § 34. F.)

WHEREFORE, Zimmer Spine prays that the Court enter judgment in its favor and award the following relief:

(a)     money damages in an amount to be proven at trial;

(b)     a declaratory judgment voiding and/or rescinding the amended Exhibit C;

(c)     a temporary restraining order and preliminary injunction restraining further

breaches by defendants pending a trial on the merits;

(d)     an award of attorneys' fees and costs; and

(e)     such other relief as the Court deems just and appropriate.


Dated:   November 23, 2010              FRUTH, JAMISON & ELSASS, PLLC

                                        By:   s/ Douglas L. Elsass
                                              Douglas L. Elsass (#219241)
                                              Adam Gillette (#0328352)
                                        3902 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, MN  55402
                                        Telephone:  612-344-9700
                                        Facsimile:  612-344-9705

                                        *ATTORNEYS FOR ZIMMER SPINE, INC.*

Of Counsel:
Dennis L. Murphy
dlmurphy@jonesday.com
Pearson N. Bownas
pnbownas@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile:  (216) 586-0212

Edward J. Sebold
edwardjsebold@jonesday.com
JONES DAY
717 Texas Avenue
Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3715
Facsimile:  (832) 239-3600