UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ZIMMER SPINE, INC.,                              CIV. NO. 10-cv-4725 (JNE/JSM)

       Plaintiff,

                                    REPORT AND RECOMMENDATION

v.

FRANK W. WAINWRIGHT and
PRO MEDICAL, LLC,

       Defendants.

       The above matter came on before the undersigned on June 6, 2011 on plaintiff's Motion to Dismiss [Docket No. 15]. Dennis L. Murphy, Esq. and Douglas L. Elsass, Esq. appeared on plaintiff's behalf. Michael P. Roche, Esq. and Scott M. Flaherty, Esq. appeared on defendants' behalf. This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

## I.   BACKGROUND

       Effective January 1, 2009, Pro Medical contracted with Zimmer Spine, a manufacturer of spine care implants and related medical products, to be its sales representative in Colorado, Montana, and Wyoming. Amended Complaint, ¶¶2, 13 [Docket No. 2]. The Sales Representative Agreement is governed by Minnesota law. Id., ¶14. According to Zimmer Spine, the defendants terminated the agreement without prior notice and orchestrated a meeting between Zimmer Spine's sales representatives and one of Zimmer Spine's "fiercest competitors," who offered to hire Zimmer Spine's sales representatives to "bring the customer relationships they had developed trading on Zimmer Spine's goodwill and reputation to that competitor." Id., ¶1. Zimmer Spine

has now sued Pro Medical and its owner, Frank Wainwright, alleging that Pro Medical and Wainright wrongfully terminated and breached their distributorship agreement with Zimmer Spine, a manufacturer of spine care implants and related medical products.  Id., ¶¶1, 2.

Wainwright and Pro Medical answered and counterclaimed, alleging that after entering into the Sales Representative Agreement, Wainwright and Pro Medical discovered that many of the products Pro Medical was required to sell were of poor and unsuitable quality and that on a number of occasions physicians to whom Wainwright and Pro Medical marketed the products complained about their poor quality. Defendants' Answer to Plaintiff's Amended Complaint and Counterclaims ("Def. Counterclaim"), ¶¶12, 13 [Docket No. 11].  Wainwright and Pro Medical also claimed that they provided Zimmer Spine with detailed reports regarding the poor quality of the products and asked Zimmer Spine to cure the issues.  Id., ¶14.  On reviewing a draft report Wainright had prepared on the quality issues, a Zimmer Spine regional sales manager instructed Wainright to omit references to product quality issues, but also acknowledged Wainright's claims regarding product quality.  Id., ¶15.

Count III of defendants' Counterclaims, which is the count at issue in this motion, alleged that Zimmer Spine breached the implied covenant of good faith and fair dealing in the Sales Representative Agreement through the following:

> The Sales Representative Agreement contained an implied covenant of good faith and fair dealing requiring that Zimmer Spine not unjustifiably hinder Wainright's or Pro Medical's performance of the contract.
>
> Zimmer Spine violated the Sales Representative Agreement's implied covenant of good faith and fair dealing by developing, manufacturing, and selling spine products of

unsuitable and non-merchantable quality for Wainright and Pro Medical to market under the Sales Representative Agreement. Zimmer Spine's actions in this regard hindered Wainright's and Pro Medical's ability to perform under the Sales Representative Agreement.

Zimmer Spine was not justified in so hindering Wainright's and Pro Medical's performance of the Sales Representative Agreement.

Zimmer Spine's actions in this regard were carried out in bad faith.

As a direct result of Zimmer Spine's conduct, Wainright and Pro Medical have been harmed and face additional harm. Such harm includes, but is not limited to, lost commissions, unrealized commissions, and reputational harm in an amount to be proven at trial.

Def. Counterclaim, ¶¶54-59.  Zimmer Spine moved to dismiss Counterclaim Count III pursuant to Fed. R. Civ. P. 12(b)(6).  Memorandum in Support of Zimmer Spine, Inc.'s Motion to Dismiss Counterclaim Count III ("ZP Mem."), p. 6 [Docket No. 28].

## II.   STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  Additionally, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles recently articulated by the

United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).   These standards apply equally to counterclaims.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   This pleading requirement does not require detailed factual allegations.   <u>Martin v. ReliaStar Life Ins. Co.</u>, Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing <u>Twombly</u>, 550 U.S. at 555).   On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal,</u> 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555).   Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S., at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556).   The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   <u>Id.</u> at 1949 (internal quotation marks and citations omitted).

At the same time, Rule 8 does not:

> require a plaintiff to plead "specific facts" explaining precisely how the defendant's conduct was unlawful.   <u>Erickson v. Pardus</u>, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)(per curiam).   Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled "give the defendant fair notice of what the

claim is and the grounds upon which it rests" Id. (quoting
Twombly 550 U.S. at 555, 127 S.Ct. 1955) and "allow [ ] the
court to draw the reasonable inference that the plaintiff is
entitled to relief." Iqbal, 129 S.Ct. at 1949.

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009).  The complaint must

be read as a whole, "not parsed piece by piece to determine whether each allegation, in

isolation, is plausible.  Id. at 594.  "Ultimately, evaluation of a complaint upon a motion

to dismiss is a 'context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.'"  Id., (quoting Iqbal, 129 S. Ct. at 1950.)

## III.   DISCUSSION

Zimmer Spine argued that defendants' Counterclaim Count III should be

dismissed because they have failed to plead that Zimmer Spine had a "subjective

motivation" or ulterior motive aimed at the defendants specifically to act "dishonestly,

maliciously, or otherwise in subjective bad faith," which Zimmer Spine argued is a

requisite for a claim for breach of the implied covenant of good faith and fair dealing.

ZP Mem., pp. 4-5 (citing BP Prods. of North Am. v. Twin Cities Stores, Inc., 534 F.

Supp.2d 959, 967-68 (D. Minn. 2007); see also Reply Memorandum in Support of

Zimmer Spine, Inc.'s Motion to Dismiss Counterclaim Count III, p. 2 ("ZP Reply Mem.")

[Docket No. 33].  According to Zimmer Spine, there is no evidence that it attempted to

direct imperfect products solely to Pro Medical and in the absence of such evidence,

Count III must be dismissed.  ZP Mem., pp. 5-6.

Wainwright and Pro Medical disagree, arguing that the law does not require them

to plead facts at this stage of the proceedings regarding exactly what Zimmer Spine's

ulterior motivation may have been for its actions.   Counterplaintiffs' Opposition to

Counter-Defendant's Motion to Dismiss Counterclaim ("WPM Mem."), p. 4 [Docket No.

30].  Relying on <u>White Stone Partners, LP v. Piper Jaffray Cos., Inc.</u>, 978 F. Supp. 878, 881 (D. Minn. 1997), Wainright and Pro Medical asserted that they need only plead sufficient facts which, if proven true, would support an inference of bad faith.  WPM Mem. pp. 4-5.  They then claimed to have met this standard by alleging that Zimmer Spine's engaged in a cover up regarding its poor quality products by having Wainright redraft his reports to delete references to quality issues and by refusing to correct quality issues when Wainright directly confronted Zimmer Spine with those issues.  <u>Id.</u>, pp. 5-6 (citing Counterclaim, ¶¶12-15).  Wainright and Pro Medical further contended that there is no requirement that they show that Zimmer Spine's conduct was specifically "aimed at" them to give them the right to a claim for breach of the covenant of good faith and fair dealing.  <u>Id.</u>, pp. 6-7.

Minnesota law imposes an implied covenant of good faith and fair dealing into every non-sales contract, "requiring that one party not unjustifiably hinder the other party's performance."  <u>In re Hennepin County 1986 Recycling Bond Litig.</u>, 540 N.W.2d 494, 502 (Minn. 1995); <u>Minnwest Bank Cent. v. Flagship Props., LLC</u>, 689 N.W.2d 295, 303, n. 5 (Minn. Ct. App. 2004) (the implied covenant of good faith and fair dealing does not apply to sales contracts).  An action for breach of the implied covenant of good faith and fair dealing arises solely out of the parties' contract, as there is "no free-floating duty of good faith unattached to the underlying legal document."  <u>Avritt v. Reliastar Life Ins. Co.</u>, 615 F.3d 1023, 1031 (8th Cir. 2010).

In the context of a claim for a breach of the covenant of good faith and fair dealing, "bad faith" has been described as "a party's refusal to fulfill some duty or contractual obligation based on an ulterior motive, not an honest mistake regarding

6

one's rights or duties." Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998) (citing Larssen v. First Bank Eden Prairie, 514 N.W.2d 831, 837 (Minn. Ct. App. 1994)). See also Minnwest Bank Cent., 689 N.W.2d at 303 ("To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty."); Prairie Island Indian Cmty. v. Minnesota Dep't. of Pub. Safety, 658 N.W.2d 876, 889 (Minn. Ct. App. 2003) ("[E]ven if the state was negligent in forming its belief that the audits are nonpublic, as long as the State's action was done honestly, the State has not breached the covenant of good faith and dealing.  There is no evidence in the record to show that the State's conduct is based on an ulterior motive."); LeMond Cycling, Inc. v. PTI Holding, Inc., Civ. No. 03-5441 (PAM/RLE), 2005 WL 102969 at *7 (Jan. 14, 2005 D. Minn.) (denying motion for summary judgment on breach of implied covenant of good faith and fair dealing where there were disputed facts regarding plaintiff's allegation that defendant failed to exercise good faith in its performance under the terms of the parties' contract.)

"Actions are done in 'good faith' when done honestly, whether [done] negligently or not." Sterling Capital Advisors, 575 N.W.2d at 125.  As the court noted in White Stone Partners,

> The term "good faith" is generally defined as "honesty in fact in the conduct or transaction concerned." * * * [T]his definition refers to "subjective" rather than "objective" good faith. * * * According to the Restatement, good faith performance of a contract includes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes the variety of types of conduct characterized as involving "bad faith." * * * Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063 (8th Cir. 1996) (each party must do everything a

7

> contract presupposes it will do to accomplish its purpose and
> the implied covenant of good faith prohibits one party from
> depriving the other party of its expected benefits under the
> contract.).

On a motion for summary judgment regarding a claim for breach of the implied covenant, the court will examine the record for evidence of subjective bad faith ulterior motive.  If such evidence is lacking, summary judgment may be granted.  See, eg. Prairie Island Indian Cmty.,658 N.W.2d at 889 (affirming district court's grant of summary judgment on claim of breach of implied covenant of good faith and fair dealing, noting that "there is no evidence in the record to how that the State's conduct is based on an ulterior motive."); BP Prods. of North Am. v. Twin Cities Stores, Inc., 534 F. Supp.2d 959, 967 (D. Minn. 2007) (granting summary judgment on defendant's counterclaim for breach of implied covenant of good faith and fair dealing, noting that while plaintiff's pricing strategy may have been "dumb", "there was no hint in the record that the pricing strategy was aimed at anyone or anything—no evidence, for example, that BP meant to put [defendant] at a competitive disadvantage or retaliate against [defendant] for some slight."); Sterling Capital Advisors, 575 N.W.2d at 125 (granting summary judgment on claim of breach of implied covenant of good faith and fair dealing, noting that plaintiff "did not present sufficient evidence to raise a fact issue that the shareholders acted in bad faith.").  Here, of course, this Court is not faced with a motion for summary judgment; before it is a motion to dismiss.

While it is true that the court in BP Products considered whether there was evidence that BP's conduct in fixing its gasoline prices for its distributors at two cents higher than their competitors was directed specifically at the plaintiff, this Court does not construe that discussion to create a new or additional pleading requirement for breach

of the implied covenant of good faith and fair dealing.   Rather, that discussion was a natural outgrowth of the court's consideration of the "subjective motivation" element of a claim for breach of the covenant.   <u>BP Prods.</u>, 534 F. Supp. 2d at 965 ("[M]innesota courts generally look to the defendant's motive to determine whether the defendant has breached the implied covenant of good faith and fair dealing.").   The court in <u>BP Prods.</u> succinctly summarized the conduct that must be proved to sustain a claim for breach of the implied covenant of good faith and fair dealing: "[t]he substantial weight of authority is that the covenant is breached only by conduct that is dishonest, or malicious or otherwise in subjective bad faith."   <u>Id.</u>   At this stage of the lawsuit, however, Wainright and Pro Medical only "need to allege sufficient facts which, if proven, would support an inference of bad faith." <u>See</u> <u>White Stone Partners</u>, 978 F. Supp. at 885.

This Court concludes that Wainright and Pro Medical have satisfied the Rule 8 pleading standard and the standard described by the court in <u>White Stone Partners</u> by alleging that: (1) Zimmer Spine refused to cure the quality issues raised by Wainright and Pro Medical and refused to compensate Wainright and Pro Medical for the negative impact of the poor quality of the products on their business; (2) Zimmer Spine instructed Wainright to omit references to product quality issues in his written reports, while also acknowledging the quality issues; (3) Wainright and Pro Medical lost existing and potential customers and suffered reputational damage as a result of Zimmer Spine's refusal to correct the quality issues; and (4) Zimmer Spine's actions hindered Wainright's and Pro Medical's ability to perform under the Sales Representative Agreement.   Def. Counterclaim, ¶¶13-16, 54-59.   These facts, if proven, support an inference of bad faith.   Whether discovery will yield additional or contrary facts is

unknown, but Wainright and Pro Medical are entitled to conduct discovery of information in Zimmer Spine's possession to further explore Zimmer Spine's conduct toward them. See White Stone Partners, 978 F. Supp. at 885 ("Plaintiff in this case has alleged sufficient facts which, if proven, would support an inference of bad faith. … Plaintiff's complaint cites circumstantial evidence supporting such an inference— … Of course, the facts alleged may be proven wrong, or additional facts gained through discovery may support other inferences, but for purposes of this motion to dismiss, the Court concludes that plaintiff's allegations are sufficient to state a claim of breach of an implied covenant of good faith and fair dealing."); see also Braden, 588 F.3d at 598 (recognizing that "while a [claimant] must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition …, we must also take account of their limited access to crucial information that may … be in the sole possession of [the opposing party]"). Further, whether Zimmer Spine's conduct, on a fully developed record, will be found to constitute breach of the implied covenant of good faith and fair dealing cannot factor into this Court's decision on Zimmer Spine's motion to dismiss. To the extent that Zimmer believes that the record developed through discovery does not support a claim for breach of the covenant of good faith and fair dealing, it may bring a motion for summary judgment at that time, but dismissal of the claim at this point is not warranted.

## IV.    RECOMMENDATION

For the reasons set forth above, it is recommended that:

Plaintiff's Motion to Dismiss [Docket No. 15] be DENIED.


Dated: July 7, 2011                    *Janie S. Mayeron*
                                       JANIE S. MAYERON
                                       United States Magistrate Judge


### **NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **July 21, 2011,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.    A party may respond to the objecting party's brief within **fourteen** days after service thereof.   All briefs filed under this Rule shall be limited to 3500 words.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.   Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **July 21, 2011.**